IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

|  |  |
|---|---|
| Bettina Whitt, Individually and as Personal Representative of the Estate of Billy Daniel Whitt,<br><br>Plaintiff,<br><br>v.<br><br>Carolinas HealthCare System ACO, LLC (currently known as Atrium Health), Dr. Victor Lerch, and Team Health Emergency Physicians,<br><br>Defendants. | C.A. No.: _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

The Plaintiff, complaining of the acts of the Defendants above named, would respectfully show unto the Court as follows:

### **PARTIES TO THIS ACTION**

1. The Plaintiff, Bettina Whitt, is Personal Representative of the Estate of Billy Whitt, deceased, and is a resident and citizen of the county of Laurens in the State of South Carolina. On April 28, 2017, the deceased received treatment at an Emergency Department of Carolinas HealthCare System-Blue Ridge Morganton, North Carolina.

2. Upon information and belief, the Defendant, Carolinas HealthCare System ACO, LLC (now doing business as Atrium Health and hereby referred to as, CHS) is a for-profit corporation with its principal place of business in North Carolina, doing substantial business in South Carolina and advertising services for such to its patients. Defendant Team Health Emergency Physicians, is healthcare facility acting by and

through its servants, agents, and employees, including but not limited to Defendant Dr. Victor Lerch. At all times herein, Carolinas HealthCare System-Blue Ridge Morganton, is and was owned and operated by Defendant Carolinas HealthCare System ACO.

3.  Defendant Victor Lerch, MD (here and after referred to as "Defendant Lerch"), is and was a medical doctor residing in Nash County, North Carolina.

## JURISDICTION AND VENUE

4.  This Court has personal jurisdiction pursuant to Federal Rule Civil Procedure 4, in pursuance of South Carolina §36-2-803. The Defendants are non-domiciliaries of the State of South Carolina who contract to supply business within the State of South Carolina and have committed tortious acts causing injury to a person within the State of South Carolina. The Defendants solicit business and engage in persistent courses of conduct in the State of South Carolina and derive substantial revenue from goods used or services rendered in the State of South Carolina. Defendants are in the business of providing health care through various agencies and locations throughout several states including the State of South Carolina. Accordingly, the Defendants expect or should expect to have consequences in the State of South Carolina.

5.  This Court has subject matter jurisdiction over this action pursuant to 28 USC §1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Venue is proper in the District of South Carolina pursuant to 28 USC §139 (c).

## FACTUAL ALLEGATIONS

6. Billy Whitt (hereinafter "Mr. Whitt"), a forty-three year old man, was admitted to the Emergency Department at Carolinas HealthCare System - Blue Ridge Morganton (hereinafter referred to as "CHS Morganton") on April 28, 2017 at 20:33.

7. Mr. Whitt was transported to CHS Morganton, via EMS, following a car accident. Prior to transport, Mr. Whitt had become "light-headed" and vomited.

8. EMS noted Mr. Whitt's injuries to be a small hematoma with a deep laceration above his right eye, a bloody nose, lacerations/abrasions above both knee caps, and a small bruised abrasion to the posterior left hip area.

9. Mr. Whitt was seen by Defendant Lerch at CHS Morganton. It was noted that Mr. Whitt stated that "his car was going down a hill, he tried to catch it and it pulled him approx. 300 feet on the ground". Upon arrival to the ED, Mr. Whitt complained of head pain and bilateral knee pain. He was noted to be on Coumadin because of a prior CVA.

10. Mr. Whitt's CT without contrast (head, maxillofacial area, spine cervical C1 and C2) showed mild left frontal scalp soft tissue swelling and laceration with a small amount of surface debris, mildly displaced bilateral nasal bone fractures, and a minimally displaced fracture of the anterior osseous nasal septum with mild overlying nasal soft tissue swelling.

11. Mr. Whitt's diagnoses included a head injury; facial laceration; knee laceration; warfarin-induced coagulopathy; and nasal bone fractures. Mr. Whitt was instructed not to take Coumadin the following day (then to reduce his dose to 7.5 mg only two days a week and take his 5 mg dose on all other days). He was discharged home at 00:17 on April 29, 2017.

12. At 05:20 on April 29, 2017, Burke County EMS was notified that Mr. Whitt was seizing. EMTs found Mr. Whitt "on the bed violently flailing and rolling around, as if in great pain." Mr. Whitt's son and a roommate stated that he "had been complaining of back pain and had been up and down throughout the night and that he had had a seizure prior to the 911 call."

13. While on the scene, Mr. Whitt had another seizure and EMS gave 2 mg of Ativan IM and initiated ventilation support. Unfortunately, his condition continued to deteriorate and CPR was initiated. Peripheral IV access could not be obtained and I/O access was required.

14. Mr. Whitt was transported to CHS Morganton. EMTs noted that Mr. Whitt was diaphoretic and pale; his head and face were swollen; the pupils in both eyes were constricted; and his entire abdomen was rigid.

15. On April 29, 2017 at 06:01, Mr. Whitt was admitted to the CHS Morganton ED via EMS.

16. Upon arrival in the ED, Mr. Whitt "was obtunded in asystole with no spontaneous pulse or respirations. CPR was in progress and patient was being bagged." Mr. Whitt's sinus rhythm was restored at approximately 06:22 on April 29th, with a palpable pulse. His blood pressure remained depressed.

17. On April 29th, at 07:24, Mr. Whitt was transported by EMS to Hickory Airport for helicopter transport to Carolinas Healthcare System-Charlotte for further care. He was noted to be a 43-year-old patient, status post cardiac arrest, with suspected internal bleeding and falling blood pressure.

18.At 09:19 on April 29th, Mr. Whitt arrived at CMC with a hemoperitoneum. He was in hemorrhagic shock, required vasopressors to support his blood pressure, and was admitted to the Surgical ICU.

19.Mr. Whitt's INR was 3.1 with no evidence that his INR was corrected with Vitamin K or FFP. There was noted concern that he was in persistent hemorrhagic shock, likely from severe intra-abdominal traumatic injury.

20.Physicians at CMC agreed that Mr. Whitt had a non-survivable anoxic injury and, based on his history and lab findings, any further intervention would constitute futile care. Mr. Whitt was pronounced dead on April 29th, at 15:59.

21.Mr. Whitt's cause of death was Anoxic - Ischemic brain injury, due to hemorrhagic shock due to blunt trauma abdominal injury, due to a pedestrian dragged by vehicle.

22.According to Mr. Whitt's autopsy, there was a large left retroperitoneal hematoma which surrounded the pancreas, spleen, urinary bladder, esophagus and left kidney. The left kidney showed disruptions of the renal capsule with hemorrhage and focal infarction of the renal cortex. The hemorrhage was complicated by being on warfarin therapy. Hemorrhage was also identified throughout the lung fields and the intra-alveolar air spaces were distended by blood. He also suffered a large retroperitoneal hemorrhage and anoxic brain injury.

23.At all times during the treatment and care of Mr. Whitt, the Defendants failed to properly diagnose and treat the decedent's retroperitoneal hematoma, from which he was suffering on or about April 28, 2017.

5

24. The Defendants' acts, which were committed by careless, negligent, grossly negligent, reckless, willful, and wonton conduct, were the proximate cause of Mr. Whitt's injuries and death. Mr. Whitt experienced pain, suffering, and death as a result of the Defendants' careless, negligent, grossly negligent, reckless, willful, and wonton conduct as defined by NCGS § 1(D)-5(7) and pursuant to NCGS § 8-46. As of the date of this filing, Mr. Whitt had a presumed life expectancy of an additional 35.6 years.

25. Plaintiff objects to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure because the rule requires medical malpractice plaintiffs, generally, to prove their case before factual discovery has begun and denies plaintiffs their rights of due process of law, of equal protection under the law, of the right to open courts, and of the right to a jury trial (all in violation of the United States and North Carolina Constitutions). More specifically, Rule 9(j) is an unconstitutional violation of the following: (a) Amendment VII and Amendment XIV of the United State Constitution; (b) Article I, Sections 6, 18, 19, 25 and 32 of the North Carolina Constitution; and (c) Article IV, Sections 1 and 13 of North Carolina Constitution. Without waiving these objections, Plaintiff, through counsel, provides the following information to comply with the requirements of Rule 9(j):

26. Pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, the medical care rendered by the Defendant and all medical records pertaining to the alleged negligence that are available to the Plaintiff after reasonable inquiry have been reviewed before the filing of this Complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence,

and who is willing to testify that the medical care provided by the Defendants to Plaintiff did not comply with the applicable standards of care.

27. In addition, if the Court later determines that the above-mentioned person, who has reviewed the medical care rendered by the Defendants and all medical records pertaining to the alleged negligence that are available to the Plaintiff after reasonable inquiry does not meet the requirements of Rule 702(b) or 702(c) of North Carolina Rules of Evidence, the Plaintiff will seek to have such person qualified as an expert witness by motion under Rule 702(e) of the North Carolina Rules of Evidence. Therefore, Plaintiff hereby moves the Court (as provided in Rule 9(j)(2) of the North Carolina Rules of Civil Procedure) that such person be qualified as an expert witness under Rule 702(e) of the North Carolina Rules of Evidence.

28. Plaintiff does not waive objections on the grounds stated to the purported pre-filing certification requirements of Rule 9(j) by providing this certification, and specifically preserves objections to any discovery related to Rule 9(j).

29. The injuries and damages sustained by the Plaintiff's deceased and the statutory beneficiaries of the Plaintiff's deceased are a direct and proximate result of, and were occasioned by, the negligence, carelessness, recklessness, gross negligence, willfulness, and wantonness on the part of the Defendants listed herein by failing to possess the degree of medical training, competency, and skill ordinarily and customarily possessed by similar healthcare providers under similar circumstances and in failing to exercise the degree of care, competence, and skill ordinarily and customarily exercised by similar healthcare providers under similar circumstances in deviating from the

ordinary and customary standards and medical care in one or more of the following particulars to wit:

  A. In failing to properly asses the Plaintiff's decedent;

  B. In failing to properly monitor the Plaintiff's decedent;

  C. In failing to promptly assess the Plaintiff's decedent;

  D. In failing to adequately diagnose and treat the Plaintiff's deceased hematoma;

  E. In failing to provide appropriate care to the Plaintiff's deceased

  F. In acting in conscious and intentional disregard and indifference to the rights and safety of the Plaintiff's deceased, which the Defendants knew or should have reasonably known that the result would have ultimately been the injuries and death of the Plaintiff's deceased;

  G. In failing to perform the appropriate level of care for the Plaintiff's deceased; and

  H. In failing to meet ordinary and customary standards of care and other ways not specifically set forth herein but may be discovered and proven in trial.

  30. At all relevant times, the servants, agents and employees of the Defendants were involved in the evaluation, care, and treatment of Mr. Whitt, were acting as employees of the Defendants and in the furtherance of the Defendants' business. Consequently, the Defendants are legally responsible for the conduct and any negligence of its servants, agents, and employees, which is imputed to the

Defendants as a matter of law, pursuant to the doctrines of respondeat superior, vicarious liability, agency, and/or any other applicable law.

31. As a direct and proximate result of the negligent, careless, grossly negligent, reckless, willful and wanton conduct of Defendants as summarized and alleged herein, the Plaintiff's deceased suffered conscious pain and suffering and death, which includes expenses for care, treatment and hospitalization bills, funeral and autopsy expenses, physical pain and mental suffering, and related harms and losses, all to his damages in a sum in excess of $75,000.00.

32. As a direct and proximate result of the negligent, careless, grossly negligent, reckless, willful and wanton conduct of Defendants as summarized and alleged herein, the Plaintiff's deceased's statutory beneficiaries suffered the loss, companionship, comfort, and love of Mr. Whitt.

33. As a direct and proximate result of the negligent, careless, grossly negligent, reckless, willful and wanton conduct of Defendants, Mr. Whitt suffered his untimely death, for which the Plaintiff should be entitled to recover punitive damages.

34. Plaintiff objects to N.C.G.S. §90-21.19 ("the cap on noneconomic damages) as unconstitutional. The cap on noneconomic damages denies medical malpractice plaintiffs, including the Plaintiff in this action, the right to a jury trial, due process of law, equal protection under the law and the right to open courts, and violates the separation of powers, and confers an exclusive emolument on healthcare providers, in violation of the United States and North Carolina Constitutions. The cap on noneconomic damages also violates the 7th and 14th Amendments of the United States

Constitution and Article 1, Sections 6, 18, 19, 25, and 32 of Article IV, Sections 1 and 13 of the North Carolina Constitution.

**WHEREFORE,** having fully set forth her Complaint above, the Plaintiff prays for judgement against the Defendants as follows:

1. The Plaintiff have and recover judgement against the Defendants in a sum to exceed $25,000.00 as compensatory damages;
2. For non-economic damages;
3. For punitive damages;
4. For the costs of this action; and
5. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

PARHAM SMITH & ARCHENHOLD, LLC


s/ S. Blakely Smith
s/ Mackenzie G. Brooke Archenhold
S. Blakely Smith (Fed ID No.: 6954)
Mackenzie G. Brooke Archenhold  (Fed ID No.: 9618)
15 Washington Park
Greenville, SC  29601
(864) 242-9008

DEMINT LAW FIRM, PA

s/ Jamie R. DeMint
Jamie R. DeMint (Fed ID No.: 9940)
15 Washington Park, Suite A
Greenville, SC 29601
(864)-214-0161

Attorneys for Plaintiff

10

## **JURY REQUEST**

The Plaintiff hereby respectfully requests a trial by jury.


s/Mackenzie G. Brooke Archenhold
Mackenzie G. Brooke Archenhold  (Fed ID No.: 9618)
S. Blakely Smith (Fed ID No.: 6954)
15 Washington Park
Greenville, SC  29601

s/ Jamie R. DeMint
Jamie R. DeMint (Fed ID No.: 9940)
15 Washington Park, Suite A
Greenville, SC 29601
(864)-214-0161